UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-446-GWU

MAGGIE STOUT, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

>whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

06-446 Stout

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Maggie Stout, was found by an Administrative Law Judge (ALJ) to have a "severe" combination of impairments consisting of diabetes and L5 disc bulge, a history of seizures, and a history of bronchitis and upper respiratory infection. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to return to her past relevant work as an office helper, and therefore was not entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "medium" level exertion, and also had the following non-exertional restrictions. (Tr. 249). She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally bend, crouch, stoop, or climb ramps and stairs;(3) could have no

concentrated exposure to pulmonary irritants, excessive humidity, or temperature extremes; and (4) was precluded from work requiring fine visual acuity. (Tr. 249-50). The VE responded that a person with these restrictions could return to the plaintiff's past relevant work. (Tr. 250).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.[1]

The plaintiff testified that she was unable to work due to complications from diabetes, which had affected her vision, although she felt she would be able to drive with corrective lenses. (Tr. 221). She had stopped working in 2000 because her blood sugar level was up to 500 every day, and remained in the range of 200 to 500. (Tr. 225, 228). It caused the skin to split on her toes every two weeks or so. (Tr. 225, 244). She also had high blood pressure, seizures, and Crohn's disease. (Tr. 233-4). She testified that, in 1991, an inch and a half of her bowels had been removed due to gangrene, but the Crohn's disease was fairly well controlled on medication. (Tr. 234). Her current weight was 189 pounds. (Id.). Although she

---

[1] The plaintiff had apparently filed a previous application for benefits which was denied in an ALJ decision of January 14, 1998. The ALJ stated that the prior claim file could not be located, and that he would conduct a de novo review of the medical evidence without applying the principles set forth in Drummond v. Commission of Social Security, 126 F.3d 837 (6th Cir. 1997). (Tr. 12). Although the plaintiff would not be eligible for benefits prior to February 11, 2004, the date she filed her SSI application (Tr. 51-4), the ALJ considered evidence at least as far back as the plaintiff's alleged onset date of September 1, 2000. (Tr. 71).

06-446 Stout

claimed to have had a heart attack in 1999 and continued to have problems with blood pressure, there had been no testing such as an echocardiogram since that time. (Tr. 238). The plaintiff had been involved in a motor vehicle accident in April, 2005 and an MRI showed a bulging disc. (Tr. 242-3). She still had difficulty using her left arm. (Id.). Finally, the plaintiff testified to having to use inhalers for asthma. (Tr. 246).

Medical evidence in the transcript includes records from a July, 1999 admission to Central Baptist Hospital for complaints of angina. (Tr. 107). Apparently, a cardiolite stress test had been positive for ischemia, but a cardiac catheterization resulted in an impression of normal left ventricular function, normal coronary arteries, and hypertension with normal renal arteries. (Tr. 110-11). The cardiologist concluded that the plaintiff's chest pain was non-cardiac, but she still needed aggressive modification of coronary artery risk factors, which included insulin-dependent diabetes, hypertension, and tobacco abuse. (Tr. 110-11). No functional restrictions are suggested, and according to the plaintiff's testimony she returned to work until approximately March of 2000. (Tr. 225).

Records from the plaintiff's treating family physician, Dr. Richard Stoltzfus, cover the period from January, 2002 until mid-2004. The notes contain references to the plaintiff having insulin-dependent diabetes mellitus, Crohn's disease, mitral valve prolapse based on a July, 1999 echocardiogram, chronic back pain, and

anxiety. (Tr. 138). Although Dr. Stoltzfus prescribed medications, his notes contain relatively little in the way of objective findings, noting, for instance, a "little spasm" of the lumbosacral spine in March, 2002. (Id.). The plaintiff complained of abdominal pain in 2002, and was referred to Dr. Jameel Butt for an evaluation. (Tr. 133). At the time of Dr. Butt's evaluation, the plaintiff was not on any medication for Crohn's disease, and, although there were "well healed" scars on her abdomen, there was no definite tenderness and a rectal examination was unremarkable. (Tr. 130). Dr. Butt planned to obtain additional testing including a colonoscopy, but there is no evidence that the plaintiff ever had the testing performed. (Tr. 130-1). Dr. Stoltzfus prescribed medications for breathing problems, but noted that the plaintiff continued to smoke. (E.g., Tr. 120).

Regarding the plaintiff's diabetes, while she claimed that her blood sugar was as high as 275 during a May, 2005 office visit (Tr. 126), there are few actual readings in the records, although there are a number of references to the plaintiff forgetting to have her lab work done. (E.g., Tr. 117, 132). Actual blood sugar readings include 153 in October, 2002 (Tr. 143) and 123 in January, 2004 (Tr. 120). There is no objective evidence that the plaintiff's blood sugar was routinely as high as she testified. Other lab work in October, 2002 showed an A1C level in the "intermediate controlled diabetic" range. (Tr. 142).

06-446 Stout

There is additional medical evidence in the transcript reflecting treatment for low back strain after a motor vehicle accident in April, 2004. (Tr. 146-9). Dr. Ronald Dubin, an orthopedist, treated the plaintiff for several months, and obtained an MRI scan of the cervical spine showing minimal spondylosis, and an MRI of the lumbosacral spine showing a bulge and facet arthropathy at L4-5 resulting in mild central canal stenosis. (Tr. 162-3). Dr. Dubin prescribed physical therapy but no medication, and did not list any functional restrictions. (Tr. 157-61).

A state agency physician who reviewed the evidence concluded that the plaintiff could perform work at all exertional levels but could never climb ladders, ropes, or scaffolds and needed to avoid all exposure to hazards due to her diabetic condition. (Tr. 203-10).

The plaintiff was also provided with Valium by Dr. Stoltzfus for complaints of anxiety, but declined his referral to the Comprehensive Care Center. (Tr. 138). She was evaluated by a psychiatrist, Dr. Kevin Eggerman, whose only diagnosis was "alcohol abuse in sustained full remission." (Tr. 154). He did not opine that she would have any limitations other than a "mildly limited" ability to understand, remember, and carry out detailed instructions, interact appropriately with the public, supervisors, and coworkers, and respond appropriately to work pressures in a work setting. (Tr. 154-5). State agency psychologists who reviewed the record concluded that the plaintiff did not have even a "severe" mental impairment. (Tr. 164, 179).

06-446  Stout

The plaintiff makes two specific arguments on appeal.  First, she alleges that the ALJ should have found Crohn's disease to be a "severe" impairment, based on the diagnosis of Dr. Stoltzfus.  However, the diagnosis seemed to have been based primarily on the plaintiff's subjective reports, and the mere diagnosis of a condition does not, in any case, establish functional restrictions.  Young v. Secretary of Health and Human Services, 925 F.2d 146, 151 (6th Cir. 1990).  It is also noteworthy that the plaintiff never had any objective testing performed by Dr. Butt.  (Tr. 130). Substantial evidence supports the ALJ's determination that this condition was not "severe."  The plaintiff also argues that the ALJ, while accepting some restrictions relating to diabetes, such as limited vision, omitted reference to the plaintiff's testimony of fatigue when her blood sugar was elevated.  (Tr. 228).  However, as previously shown, there was little objective evidence of persistently elevated blood sugar readings.  Accordingly, this argument is also without merit.

The decision will be affirmed.

This the 12th day of September, 2007.



Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**